UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

STEVEN EVANS,                                   :
                                                :
                                                :
                              Plaintiff,         :
                                                :        REPORT AND
         -against-                              :        RECOMMENDATION
                                                :
                                                :
SEIU LOCAL 32BJ and NEW YORK CITY:                       23-CV-8748 (DG)(MMH)
SCHOOL SUPPORT SERVICES,                         :
                                                :
                                                :
                              Defendants.  :

------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

*Pro se* Plaintiff Steven Evans sued Defendant SEIU Local 32BJ ("the Union") in Kings

County Civil Court on September 20, 2023, alleging damages related to his termination in

November 2022, and the Union removed the case to this Court on November 28, 2023.  (*See*

ECF No. 1.)[1]  In an amended Complaint, Plaintiff alleges that the Union and Defendant New

York City School Support Services ("NYCSSS"), his former employer, breached the collective

bargaining agreement ("CBA") between NYCSSS and the Union, in violation of Section 301

of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (*See generally* Am.

Compl., ECF No. 13.)[2]

Before the Court is NYCSSS's motion to dismiss for failure to state a claim, pursuant

to Federal Rule of Civil Procedure 12(b)(6), and the Union's motion for summary judgment,

pursuant to Rule 56(b).  (*See generally* NYCSSS Mot., ECF No. 55; Union Mot., ECF No. 58.)

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___")
and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] Plaintiff prepared the Amended Complaint with the assistance of the City Bar Justice Center's
Federal Pro Se Legal Assistance Project.  (Am. Compl., ECF No. 13 at 1 n.1.)

The Honorable Diane Gujarati referred the motions for report and recommendation.  For the reasons stated below, the Court respectfully recommends that: (1) both motions should be **granted** and (2) the Amended Complaint should be dismissed with prejudice.

## I.    BACKGROUND

### A.    Facts

#### 1.    Allegations in the Amended Complaint[3]

At all relevant times, Plaintiff was a New York resident who worked for NYCSSS as a handyman with custodial duties at Middle School 232, the Middle School of Media Law (the "School").  (Am. Compl., ECF No. 13 ¶ 8.)  NYCSSS, his former employer, is a non-profit corporation that provides building services to New York City schools.  (*Id.* ¶ 7.)  The Union is a labor organization representing employees in the property service industry.  (*Id.* ¶ 6.)  Plaintiff's employment was governed by the CBA between NYCSSS and the Union.  (*See id.* ¶ 10.)

On October 25, 2022, at around 5:00 p.m., Plaintiff was involved in an altercation in the third-floor hallway of the School with Altonion Stewart (the "Incident"), whom Plaintiff believed was a teacher's assistant at the School.  (*Id.* ¶ 13.).  The Incident happened after Plaintiff left a note in a classroom requesting that trash be placed in wastebaskets rather than left on desks or tables in the room.  (*Id.* ¶ 13.)  During a conversation about the note, Stewart began yelling at Plaintiff and became visibly aggressive toward Plaintiff, causing Plaintiff to experience a seizure due to a preexisting brain tumor.  (*Id.* ¶ 14.)  Stewart struck Plaintiff in the arm as he fell to the ground.  (*Id.*)  Several other teachers and staff members witnessed the

---

[3] For the motion to dismiss, the Court assumes the truth of Plaintiff's factual allegations in the Amended Complaint.

Incident.  (*Id.* ¶ 15.)  Approximately one hour after the incident, Plaintiff's supervisor Frank Lossman instructed him to leave the building.  (*Id*. ¶ 17).  Lossman agreed when Plaintiff informed Lossman that he wanted to take a few vacation days to recover from the Incident. (*Id.* ¶ 18.)

Plaintiff returned to work at a nearby school on November 3, 2022, after Lossman informed him that the School's principal did not want him to return to the School.  (*Id.* ¶¶ 19–20.)  On November 4, 2022, a Union representative called Plaintiff to inform him that he was terminated and had to leave the premises immediately but did not explain why.  (*Id.* ¶ 20.)  Plaintiff called the Union on November 7, 2022, and asked the Union to initiate a grievance on his behalf. (*Id.* ¶ 22.)

Plaintiff met with a Union representative in December 2022 to explain that he was not at fault for the Incident and asked the representative to obtain evidence to support his grievance, including witness statements, security camera footage, and reports of prior incidents involving Stewart.  (*Id.* ¶¶ 23–29.)  However, the representative did not obtain the requested information after the meeting, and Plaintiff requested another meeting.  (*Id.* ¶ 30.)  Plaintiff met with a different Union representative in January 2023.  (*Id.* ¶ 31.)  At this meeting, he showed the Union representative some of the witness statements and asked the representative to obtain more evidence.  (*Id.*)  Instead, the Union representative suggested that Plaintiff was at fault for the Incident and mentioned an unrelated incident involving Plaintiff at another school the previous year.  (*Id.*)  The Union representative did not listen to Plaintiff or help him with his grievance.  (*Id*.)  Following this meeting, Plaintiff continued to request that the Union obtain security video footage of the Incident.  (*Id.* ¶ 32.)  When Plaintiff met with a Union

3

representative in March 2023 and reviewed security camera footage that did not capture the Incident, Plaintiff repeated his request for the representative to obtain the correct video.  (*Id.*)

Eventually, Plaintiff and a Union representative attended a grievance hearing with what Plaintiff believed was the New York City Department of Education.  (*See id.* ¶ 35.)  The Union representative did not explain the meeting's purpose or attendees to Plaintiff; instead, Plaintiff was instructed not to speak or ask questions.  (*Id.*)  The Union representative did not argue on Plaintiff's behalf or present any evidence in Plaintiff's defense, including a letter from Lossman, his supervisor, stating that Plaintiff had good employment history and fulfilled his work duties.  (*Id.* ¶¶ 33–35.)

### 2.    Undisputed Material Facts[4]

At the time of the Incident, Plaintiff had been employed by NYCSSS over a decade, and the CBA covered his entire period of employment.  (*See* SMF ¶¶ 1–3.)  Plaintiff was familiar with the CBA's grievance process because he had contested a suspension in 2015 after an altercation with three individuals at another school and was reinstated.  (SMF ¶ 29.)  Further, Plaintiff was involved in incidents involving verbal altercations with teachers and/or staff at the School at least five times between 2017 and 2020.  (SMF ¶¶ 25–29.)

Shortly after the Incident, Plaintiff submitted a written statement dated October 28, 2022 to the Union, which stated that "Antonio [sic] Stewart Jr., became hostile, belligerent and

---

[4] For the motion for summary judgment, the Court considered NYCSSS's Local Civil Rule 56.1 Statement of Facts ("SMF") (ECF No. 60) and its supporting declarations and exhibits (ECF Nos. 61–64).  The Court construes the facts in the light most favorable to Plaintiff as the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).  However, because Plaintiff did not file a Local Civil Rule 56.1 counterstatement, the Court deems the facts in the Union's SMF to be admitted.  Loc. Civ. Rs. 56.1(b)–(c).  That said, the Court relies on the Union's SMF only where the record supports the statements contained therein. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 421 (S.D.N.Y. 2014).

then threatened me," and that he and Stewart "argued for a few seconds, and then Antonio Stewart Jr., punched [Plaintiff] with his fist in one of [Plaintiff's] arms, which was being held back by several staff members." (Allen Decl. Ex. A, ECF No. 64 at 6.) One week after the Incident, on November 4, 2022, NYCSSS informed Plaintiff via email that he was immediately suspended in contemplation of dismissal. (SMF ¶ 10; Graziano Decl. Ex. A, ECF No. 63 at 4.)

On November 8, 2022, the day after Plaintiff filed a Complaint with the Union, Union representative Tyrae Allen initiated a grievance on Plaintiff's behalf. (SMF ¶ 12; Allen Decl. ECF No. 64 ¶ 3.) The same day, Allen sent an information request to NYCSSS as part of the Union's investigation, seeking the following:

> [1] Written statement of reason for the discipline; [2] All prior warning notices, suspension notices, or other disciplinary notices issued to the member; [3] Any other documents or materials including videotapes & photos which form the basis for the employer's disciplinary action, including letters from tenants or other third parties; [4] Statements, emails, written complaints from the client, witness, supervisors regarding the conduct or events that led to the termination of the above member; [5] Copy of the policy/rule the member allegedly violated.

(Allen Decl. Ex. B, ECF No. 64 at 8–9.) NYCSSS produced the witness statements of Altonio Stewart Jr., Renee Smith, and a student at the School ("the Student") to the Union. (*See id.* Ex. D, ECF No. 64 at 44–46.) Allen scheduled several meetings with Plaintiff in November and December 2022, but they were cancelled because NYCSSS had not yet produced any video footage of the Incident.[5] (*See* SMF ¶ 16; Allen Decl. Ex. C, ECF No. 64 at 16 (text messages dated Dec. 5, 2022 and Dec. 14, 2022).)

---

[5] The record evidence thus contradicts Plaintiff's allegations that he met with the Union representative in December 2022. (Am. Compl., ECF No. 13 ¶¶ 23–24.)

5

During this period, Plaintiff sent text messages to Allen about obtaining video footage from NYCSSS regarding the incident. (*See id.* Ex. C, ECF No. 64 at 12–38.) Allen sent another request for video footage on January 11, 2023, and received the footage on January 18, 2023. (SMF ¶ 17.) Plaintiff met with Allen on January 23, 2023 at the Union office specifically to review the video footage, which did not depict the Incident. (SMF ¶ 19; Allen Decl., ECF No. 64 ¶ 5.)[6] The next day, Allen sent another information request to NYCSSS for video footage '"between 4:30pm-5:45pm, on the opposite side of the doors by the bathroom on the 3rd floor," but NYCSSS responded that no additional video footage existed. (*See* SMF ¶ 20.)

On February 21, 2023, Plaintiff and Allen met with NYCSSS representatives regarding Plaintiff's suspension, and NYCSSS converted Plaintiff's indefinite suspension to termination on the same day. (SMF ¶¶ 30–31; Graziano Decl. Ex. B, ECF No. 63 at 6.) After the meeting, Allen reviewed all the evidence gathered during his investigation, including witness statements, video footage, Plaintiff's statement, and Plaintiff's prior disciplinary record. (SMF ¶ 32.) Allen and Joe Aulisio (the Union's Field Coordinator) concluded that Plaintiff's grievance should not be sent to arbitration because NYCSSS would likely meet their burden to show just cause for Plaintiff's arbitration. (SMF ¶ 32.) On March 9, 2023, Allen informed

---

[6] Although Plaintiff alleges that he was only shown the video footage at a March 2023 meeting, the record reflects that Allen reviewed the video footage at the January 23, 2023 meeting. (Allen Decl. Ex. C, ECF No. 64 at 19–21 (text messages dated Jan. 18, 2023 and Jan. 23, 2023).)

6

Plaintiff of the Union's decision not to pursue arbitration and that he could appeal to the Union's Grievance Appeal Board ("GAB").[7]  (Allen Decl. ECF No. 64 ¶ 12; SMF ¶¶ 35–36.)

On April 17, 2023, the Office of the Special Commissioner of Investigation ("SCI") for the New York City Department of Education sent a report to the Union finding that the allegations against Plaintiff had been substantiated.  (Graziano Decl. Ex. D, ECF No. 63 at 9–12.)  The report credited Stewart's description of the Incident that Plaintiff became "hostile and vulgar," and another witness's statement that she "had to get between [Plaintiff] and Stewart Jr. in effort to de-escalate the situation" and that Plaintiff waited outside the School for Stewart after the Incident.  (*Id*.)

Plaintiff met with the GAB on May 24, 2023 to present his appeal.  (SMF ¶¶ 35–37).  The GAB reviewed all the evidence collected during the investigation and a memorandum prepared by the Union's attorney explaining why the Union chose not to pursue arbitration.  (Aldebol Decl., ECF No. 62 ¶ 4; *id.* Ex. A, ECF No. 62 at 4–5.)  After the hearing, the GAB prepared a report and recommended that Plaintiff's appeal should be denied.  (*Id.* Ex. B, ECF No. 62 at 11.)  By letter dated June 1, 2023, the GAB notified Plaintiff that his appeal was denied "based on the determination that the complaint lacks sufficient merit for the Union to be likely to prevail in arbitration."  (*Id.* Ex. C, ECF No. 62 at 15.)

**B.     Procedural History**

Plaintiff, proceeding *pro se*, sued the Union in Kings County Civil Court on September 20, 2023, stating a cause of action as "Other for $24,000.00 with interest from 11/03/2022."

---

[7] The GAB is an elected group of rank-and-file Union members who meet to review determinations by Union staff not to take disciplinary grievances to arbitration.  (SMF ¶ 36.)  The GAB has the authority to overrule the decisions made by Union staff.  (*Id.*)

(Notice of Removal Ex. A, ECF No. 1-1 at 2.)  The Union removed the case on November 28, 2023.  (Notice of Removal, ECF No. 1.)  The Court granted Plaintiff leave to amend on March 7, 2024. (*See* Mar. 7, 2024 Min. Entry.)  On May 30, 2024, Plaintiff filed the Amended Complaint alleging that: (1) the Union breached its duty to fairly represent him for his workplace grievance under the CBA and (2) NYCSSS breached the CBA by terminating his employment without just cause.  (*See* Am. Compl., ECF No. 13 ¶¶ 40–47.)  The Union answered the Amended Complaint on June 13, 2024, and proceeded to exchange discovery with Plaintiff.  (Union Answer, ECF No. 14; *see* Mar. 7, 2024 Min. Entry; June 26, 2024 Min. Entry; Sep. 5, 2025 Min. Entry; Oct. 17, 2024 Min. Entry).  Meanwhile, Plaintiff served the Amended Complaint on NYCSSS on September 25, 2024.  (ECF No. 24.)  At a status conference on November 15, 2024, the Court closed discovery between Plaintiff and the Union; NYCSSS stated its intent to seek dismissal of the Amended Complaint; and the Union stated its intent to move for summary judgment.  (Nov. 15, 2024 Min. Entry.)

NYCSSS moved to dismiss the Amended Complaint on April 1, 2025.  (NYCSSS Mot., ECF No. 55.)  The Union moved for summary judgment on April 21, 2025.  (Union Mot., ECF No. 58.)  The motions were deemed fully briefed as of June 3, 2025.  (June 3, 2025 Order.)[8] Despite the Court's order, in a letter dated June 13, 2025, Plaintiff opposed the motions.  (Pl.'s Ltr., ECF No. 73.)  Judge Gujarati referred the motions for report and recommendation.  (Aug. 30, 2025 Order Referring Mot.)  The Court heard oral argument on February 19, 2026, and reserved decision.  (*See generally* Feb. 19, 2026 Hr'g Tr. ("Tr."), ECF No. 80.)

---

[8] On June 5, 2025, the Court stayed discovery between Plaintiff and NYCSSS pending the motion to dismiss.  (June 5, 2025 Order).

## II.    LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Mazzei v. The Money Store*, 62 F.4th 88, 92 (2d Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A "plausible" claim means that a plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "'Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.'" *Ghelichkhani v. N.Y. Coll. of Traditional Chinese Med.*, No. 23-CV-8629 (RER) (AYS), 2025 WL 2494353 at *4 (E.D.N.Y. Aug. 29, 2025) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006)). "If a defendant raises a statute of limitations defense in a pre-answer motion to dismiss, that motion 'is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.'" *Goodman v. Loc. 804 Union of Int'l Bhd. of Teamsters*, No. 21-CV-4655 (AMD)(LB), 2022 WL 4586309, at *3 (E.D.N.Y. Sept. 29, 2022) (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)).

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (internal quotation marks omitted). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). When reviewing the record, the court must resolve all ambiguities and draw all permissible factual inferences in favor of the

9

non-movant. *Id.* If the moving party meets its initial burden, then the nonmoving party must present admissible evidence that would be enough to support a jury verdict in its favor. *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022).

Because Plaintiff is proceeding *pro se*, the Court construes his pleadings liberally and treats them as raising the strongest arguments possible. *See Raysor v. Safi*, No. 19-CV-6265 (DG)(MMH), 2025 WL 2541872 at *5 (E.D.N.Y. Sept. 4, 2025) (quoting *Johnson v. Buffalo Police Dep't*, 46 F. App'x 11, 12 (2d Cir. 2002)), *R.& R. adopted by* Order Adopting R. & R., *Raysor v. Safi*, No. 19-CV-6265 (DG)(MMH) (E.D.N.Y. Sept. 24, 2025). However, a *pro se* plaintiff still must satisfy the same standards as a represented plaintiff on a motion to dismiss or a motion for summary judgment. *See Essani v. Earley*, No. 13-CV-3424 (DG)(SIL), 2021 WL 1579671, at *4 (E.D.N.Y. Apr. 22, 2021).

## III.   DISCUSSION

NYCSS argues that the Amended Complaint should be dismissed because: (1) Plaintiff did not file his claims within the required six-month period under the LMRA's statute of limitations and (2) Plaintiff otherwise lacks standing to bring a claim against NYCSSS for a breach of the CBA between NYCSSS and the Union. (NYCSSS Mem., ECF No. 55-1 at 6–8.) The Union moves for summary judgment, arguing that it adequately investigated Plaintiff's grievance and did not act arbitrarily or in bad faith by declining to pursue arbitration on his behalf. (Union Mem., ECF No. 59 at 9–15.) Liberally construed, Plaintiff argues that equitable tolling should extend his deadline to file his claim. (Pl.'s Ltr., ECF No. 73 at 1; Tr. 24:25–25:14.). As discussed below, the claims against both Defendants should be dismissed with prejudice.

10

## A.    Applicable Law

Under Section 301 of the LMRA, "an employee may bring a complaint against her union and/or her employer alleging (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer." *Sullivan v. Gelb*, 735 F. Supp. 3d 282, 297 (S.D.N.Y. 2024) (quoting *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113–14 (2d Cir. 1997) and citing *DelCostello v. Int'l Bhd. of Teamster*s, 462 U.S. 151, 163–64 (1983)) (subsequent history omitted).    "Such a suit is known as 'a hybrid § 301/duty of fair representation claim.'" *Kelly v. Commc'ns Workers of Am., AFL-CIO*, No. 22-CV-10923 (JGLC) (SDA), 2023 WL 51054824, at *3 (S.D.N.Y. July 25, 2023) (quoting *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005)), *R. & R. adopted by* 2023 WL 5108756 (S.D.N.Y. Aug. 9, 2023).

"A union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Hall v. Reliant Realty Servs.*, No. 23-CV-385 (HG)(SJB), 2024 WL 964731, at *4 (E.D.N.Y. Mar. 5, 2024), *aff'd*, No. 24-CV-710, 2025 WL 799268 (2d Cir. Mar. 13, 2025).  "'[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" *Zaki v. OTG Mgmt. LLC*, No. 23-CV-8189 (NCM)(PK), 2025 WL 2933018, at *4 (E.D.N.Y. June 24, 2025) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)), *R. & R. adopted by* 2025 WL 2642140 (E.D.N.Y. Sept. 15, 2025).  "'A union acts in bad faith when it acts with an improper intent, purpose, or motive,' [and] a claim that a union acted in bad faith 'requires a showing of fraudulent, deceitful, or dishonest action.'" *Toussaint v. Interfaith Med. Ctr.*,

11

No. 21-CV-1100 (ARR)(JRC), 2022 WL 118722, at *4 (E.D.N.Y. Jan. 12, 2022) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) and *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)).

A six-month statute of limitations applies to a hybrid § 301/duty of fair representation claim. *Gadsen v. New York City Sch. Support Servs.*, No. 18-CV-4417 (BMC), 2018 WL 5253113, at *2 (E.D.N.Y. Oct. 22, 2018). The six-month limitations period "begins to run when the employee knew or should have known of the breach of the duty of fair representation." *Sullivan*, 735 F. Supp. 3d at 308 (quoting *White*, 128 F.3d at 114). Further, the six-month limitations period begins from that time "even if some possibility of nonjudicial enforcement remained," such as a grievance hearing. *Id.* (quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995)).

## B.    Timeliness

NYCSSS argues that Plaintiff knew or should have known that the Union had allegedly breached its duty in or around December 2022. (NYCSSS Mem., ECF No. 55-1 at 7.) NYCSSS relies on Plaintiff's allegations that he met with his Union representative in December 2022 to explain why he was wrongfully terminated. (*See id.* (citing Am. Compl., ECF No. 13 ¶¶ 20, 22).) At that meeting, Plaintiff claims he asked the Union representative to obtain specific information helpful to his defense, including security camera footage of the Incident, written witness statements, and reports of prior incidents involving Stewart. (Am. Compl, ECF No. 13 ¶¶ 24–26, 28–29.) But at that time, Plaintiff did not have a good-faith basis to believe that the Union would not obtain the requested information. Thus, Plaintiff did not have any indication in December 2022 about any alleged breach of duty.

12

In contrast, when Plaintiff met with a second Union representative in January 2023, Plaintiff had a reasonable basis to conclude that the Union was not acting on his behalf. "Where a union refuses or neglects to assist a union member, decides to stop assisting a member, or acts against the interests of a member, a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." *Sullivan*, 735 F. Supp. 3d at 308. Plaintiff alleges that in this meeting, he showed the Union representative copies of some written witness statements and asked the representative to obtain additional statements, but instead the Union representative blamed him for the Incident and reminded him about an unrelated incident at another school, implying that Plaintiff had a pattern of workplace altercations. (*See* Am. Compl., ECF No. 13 ¶ 31.) Plaintiff further alleges that the Union representative did not listen to him or help him obtain evidence from NYCSSS during this meeting. (*Id*.) Construing these facts in the light most favorable to Plaintiff, the first time Plaintiff knew that the Union was not acting in good faith to advocate for him, in breach of the CBA, was January 2023. By failing to assist Plaintiff in obtaining relevant evidence and by allegedly suggesting that he was at fault, the Union's conduct made it objectively reasonable for Plaintiff to recognize a breach of the duty of fair representation. As a result, the statute of limitations began to accrue as of January 2023. *See Cohen*, 68 F.3d at 67 (LMRA § 301 claim began to accrue when the union "had not lifted a finger" in defense of its member).

That said, Plaintiff's LMRA claims are time-barred. Plaintiff's LMRA claims should have been filed in July 2023, six months after the January 2023 meeting with the Union representative. But Plaintiff did not file the Complaint against the Union in Kings County Civil Court until September 20, 2023, more than nine months after the January 2023 meeting,

and the Amended Complaint against NYCSSS until May 2024, more than 16 months after the meeting.  Further, his allegations that the Union failed to help him after the January 2023 meeting or to advocate for him at the subsequent grievance hearing do not change the start date for the six-month limitation period.  "Once a plaintiff learns of his union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiff[ ] 'cannot be treated as a continuing violation that preclude[s] the running of the limitations period.'"  *Ubalde v. Maimonides Med. Ctr.*, No. 23-CV-3948 (MKB), 2024 WL 3553438, at *5 (E.D.N.Y. July 26, 2024) (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995)).  Therefore, Plaintiff's LMRA claims are barred by the six-month statute of limitations.[9]

Liberally construed, Plaintiff argues that equitable tolling of the statute of limitations applies to his claims because (1) the Union's attorney was not available for a court status conference in this case, (2) though the Complaint named the Union as a defendant, the Court permitted him to amend the Complaint to add claims against NYCSSS, and (3) he had surgery during this action that "took a lot of time from the court."  (*See* Pl.'s Ltr., ECF No. 73 at 1–2; *see* Tr. 24:25–25:14.)  The Court respectfully disagrees.  "Under the doctrine of equitable tolling, a complainant may be allowed to file his or her claim outside the applicable limitations period if, because of some action on the defendant's part, the complainant was unaware that the cause of action existed."  *Sullivan*, 735 F. Supp. 3d at 309 (quoting *Long v. Frank*, 22 F.3d 54, 58 (2d Cir. 1994)).  The periods of delay that Plaintiff describes all occurred during this

---

[9] Because the Court determines that Plaintiff's wrongful termination claim against NYCSSS should be dismissed as time-barred, the Court does not address NYCSSS's alternative argument that Plaintiff does not have standing to assert a breach of contract claim for alleged violations of the CBA.  (*See* NYCSSS Mem., ECF No. 55-1 at 7–8.)

14

federal action, long after he filed the Complaint in Kings County Civil Court.  And Plaintiff does not allege any facts to show that either NYCSSS or the Union acted to prevent him from learning about the LMRA claims.  This case thus does not present exceptional circumstances to warrant equitable tolling.

Finally, while Plaintiff does not seek leave to amend the claims against NYCSSS, such permission should not be granted.  "Where a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend."  *Zaki*, 2025 WL 2933018 at *4 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (noting that leave to amend "should generally be denied in instances of futility") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiff cannot allege any facts sufficient to show that he knew or should have known about the Union's breach of its duty of fair representation later than January 2023, or that he filed his Civil Court complaint fewer than six months after that.

For all the foregoing reasons, the Court respectfully recommends that Plaintiff's LMRA claim against NYCSSS should be dismissed with prejudice and without leave to amend.

### C.    Duty of Fair Representation[10]

Even if Plaintiff's hybrid § 301/duty of fair representation claim was timely filed, there is no genuine factual dispute regarding whether the Union breached its duty of fair representation under the CBA.

---

[10] In a hybrid § 301 / duty of fair representation claim, an employee must establish both the employer's breach of the CBA *and* the Union's breach of its duty of fair representation, or else the claim fails as a matter of law.  *See Smith v. Brookhaven Sci. Assocs., LLC*, 473 F. Supp. 3d 159, 165-66 (E.D.N.Y. 2020) (citing *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178 (2d Cir. 2001), *DelCostello*, 462 U.S. at 165, and *Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29, 33 (2d Cir. 2000)), *aff'd*, 848 F. App'x 57 (2d Cir. 2021).

The Amended Complaint alleges that the Union acted arbitrarily and in bad faith by failing to: (1) obtain relevant, readily available evidence central to Plaintiff's grievance, including written witness statements, video footage, and reports of prior incidents involving Stewart; and (2) properly represent him at the grievance hearing.  (Am. Compl., ECF No. 13 ¶¶ 30–39.)  The Union argues that it adequately investigated Plaintiff's grievance in good faith. (Union Mem., ECF No. 59 at 12–15.)  And although Plaintiff does not expressly object to the Union's decision not to arbitrate his grievance, the Union also asserts that it acted rationally and in good faith when making that decision based on the evidence gathered during its investigation.  (*See id.* at 8–12.)

The undisputed material facts show that the Union acted rationally and in good faith to investigate Plaintiff's grievance.  Courts afford unions broad discretion in determining how to present a grievance, including decisions regarding strategy, argument, and evidentiary presentation. *See Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 284 (E.D.N.Y. Jan. 23, 2015). The Union conducted a straightforward investigation to gather relevant evidence in support of Plaintiff's grievance.  The day after Plaintiff asked for a grievance, Allen promptly requested documents, videos, and other materials from NYCSSS that supported NYCSSS's decision to suspend Plaintiff pending termination.  (Allen Decl. Ex. B, ECF No. 64 at 8–9.)  After NYCSSS did not provide videos, Allen sent follow-up requests to obtain them.  (SMF ¶ 17.) Upon receipt of the footage, Allen quickly scheduled a meeting with Plaintiff to review it and

---

For this reason, the Union's motion for summary judgment should be denied as moot and the claims dismissed because there cannot be a genuine issue of material fact where there are no valid claims against the Union.  In an abundance of caution, the Court addresses the merits of the Union's motion as if Plaintiff's LMRA claim was not time-barred and concludes that summary judgment is appropriate.

once he determined it was not correct, he sent another, more detailed request to NYCSSS. (*See* SMF ¶ 20.) Although Plaintiff alleges that the video shown did not capture the Incident and was "blank" or incorrect, he does not allege facts demonstrating that the Union's requests for the video evidence were irrational.

Further, "when the union does act on a grievance, as the union did here, its failure to present specific evidence . . . is not sufficient to form the basis of an unfair representation claim." *Felton v. Loc. Union 804, Int'l Bhd. of Teamsters*, No. 17-CV-2309 (AMD)(RML), 2020 WL 3104048 at *3 (E.D.N.Y. June 11, 2020) (collecting cases where a union's failure to present certain witnesses, video recordings, and/or records in grievance proceedings did not support hybrid § 301/duty of fair representation claims). For example, Allen did not seek records from Stewart's disciplinary history because Stewart is not an NYCSSS employee, NYCSSS likely would not have that information, and Stewart's disciplinary history is not relevant to whether Plaintiff acted toward him in an aggressive manner in a school building. (Def. Mem., ECF No. 59 at 13.) There is no evidence that Allen acted fraudulently, deceitfully, or dishonestly in making this decision, which is required to show the Union's bad faith. And Plaintiff's "dissatisfaction with the manner in which the union represented him during his suspension and the investigation that followed" does not support a finding that the Union acted irrationally. *Langenback v. 32BJ SEIU*, No. 24-CV-3574 (OEM)(CLP), 2025 WL 2240321, at *5 (E.D.N.Y. Aug. 6, 2025).

Finally, the Court cannot conclude that the Union's decision to decline arbitration for Plaintiff's grievance was irrational "'in light of the factual and legal landscape at the time of the union's actions.'" *Zaki*, 2025 WL 2933018, at *4 (quoting *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 67). After NYCSSS converted Plaintiff's suspension into an immediate termination,

17

Allen reviewed all the evidence gathered during the Union's investigation and recommended that the grievance should not go to arbitration because: (1) the evidence produced during the investigation and at the February 21, 2023 grievance hearing supported NYCSSS's claim that Plaintiff was engaged in a physical altercation with Stewart, a non-NYCSSS employee, including Plaintiff's admission in his written statement that Stewart punched him in the arm "which was being held back by several staff members"'; (2) Plaintiff had not produced the names of any witnesses who would support his version of the Incident or contradict the witness statements NYCSSS provided to the Union; and (3) Plaintiff had prior disciplinary history for incidents involving verbal altercations at the School between 2017 and 2020. (*See* SMF ¶ 32.) From the Union's perspective, given NYCSSS's policy of terminating employees who engage in physical altercations on school premises, "it seemed unlikely [the Union] could persuade an arbitrator to reinstate any employee"—especially one with Plaintiff's disciplinary history— "who engaged in aggressive conduct at a school." (*Id.*) Given this background, the Union's decision was not outside the range of reasonableness. *See Zaki*, 2025 WL 2933018 at *4 ("'A court's examination of a union's representation must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'") (quoting *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013)). Significantly, two other sources independently credited the same witness statements that the Union considered in its decision: the SCI found the allegations against Plaintiff to be substantiated based on those witness statements, while the GAB denied Plaintiff's appeal because Plaintiff "and the other worker almost came to blows" and the witnesses "verified that [Plaintiff] was the aggressor" (SMF ¶¶ 33, 37.) Considering this generally undisputed factual

18

record, the Court finds that the Union's decision to decline arbitration was not arbitrary or made in bad faith.

In sum, the Union establishes that there is no genuine factual dispute as to whether it breached its duty of fair representation to Plaintiff. The Court therefore respectfully recommends that the Union's motion for summary judgment should be granted.

## IV.    CONCLUSION

Based on the foregoing, the Court respectfully recommends that Defendant New York City School Support Services's motion to dismiss (ECF No. 55) should be **granted** and Defendant SEIU Local 32BJ's motion for summary judgment (ECF No. 58) should be **granted**. The Court further respectfully recommends that the Amended Complaint (ECF No. 13) should be dismissed with prejudice and without leave to amend.

A copy of this Report and Recommendation is being served on Defendants via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to *pro se* Plaintiff Steven Evans at the following address:  41 West 23rd Street, Deer Park, New York 11729.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Specifically, as the Court noted at oral argument, each party must review the Report and Recommendation upon receipt and timely file a letter stating that party's disagreements with the Court's findings and rulings. (*See* Tr. 30:20–31:2.)  Any requests for an extension of time to file objections shall be directed to Judge Gujarati. If a party fails to object timely to this

Report and Recommendation, it waives any right to further judicial review of this decision.

*See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
February 21, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

20